UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| VENITO LYNN JOHNSON, SR., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:06CV43 CDP |
| CAPTAIN JAMES MULCAHY, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

In an earlier order, this Court granted defendant James Mulcahy's motion for summary judgment as to plaintiff Venito Johnson's claim of failing to arrange or provide religious services for Muslims at the Cape Girardeau County Jail. However, before that dismissal Johnson supplemented his complaint with two claims not addressed by Mulcahy in his motion for summary judgment. Now Mulcahy has filed a second motion for summary judgment as to the two pending claims. Johnson opposes Mulcahy's motion and seeks appointment of counsel for a third time in this case. Because I conclude that there is no genuine dispute of material fact as to Johnson's deprivation of food claim and his lack of due process on a commissary restriction claim, I will grant Mulcahy's second motion for summary judgment.

**Factual Background**

Plaintiff Venito Johnson filed this *pro se* § 1983 action on March 20, 2006. His motion for leave to proceed in forma pauperis was granted and process was issued on April 3, 2006. On May 1, 2006, Johnson's motion to supplement the complaint was granted and the supplement was docketed the same day. In his original complaint against Mulcahy, the Chief Jailer at the Cape Girardeau County Jail, Johnson alleged that his constitutional rights under the First Amendment were being violated by Mulcahy's failure to provide religious services for Muslims. On November 2, 2006, I granted Mulcahy summary judgment on this claim.

In the supplement to his complaint, Johnson added two additional claims unrelated to his religious services claim. His second claim for relief states that on February 4, 2006, his prison pod was put on lockdown after inmates refused to eat and were throwing food trays on the floor. Johnson alleges that for three or four days, while on lockdown, he and other inmates in the D-pod received only one or two cold-cut sandwiches for each meal, while inmates outside of his pod received whole food trays. He claims that "Cape County used deprivation of food as a disciplinary action, violating statutes."

In Johnson's third claim for relief he states that on January 22, 2006, he received a violation from a correctional officer that resulted in a 30-day

commissary restriction. According to Johnson, he was not notified of the violation, not given a chance to plead his case, and was found guilty without a hearing. He alleges that his commissary privileges were taken without due process, resulting in a deprivation of property and money in violation of his rights granted by statute.[1]

## Discussion

**A.     Legal Standards**

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by

---

[1] In his response in opposition to summary judgment and in his addendum filed June 22, 2007, Johnson mentions allegations of improper placement in solitary confinement without a hearing in August of 2006, and he argues the need to thoroughly investigate the Cape County Jail grievance procedures. Neither of these claims were raised in the complaint and are therefore not properly before the court.

affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249. Under these standards, I review the facts of this case while taking into account the Supreme Court's mandate that pro se documents be liberally construed. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**B.      Deprivation of Food As Discipline Claim**

Johnson is correct in asserting that a Missouri statute prohibits the use of food deprivation as a disciplinary tool: "All offenders confined in correctional centers shall be supplied with a sufficient quantity of wholesome food. Deprivation of food shall not be used as a disciplinary action." Mo. Rev. Stat. § 217.240. However, stating a claim under state law is not enough for a § 1983 claim. Johnson must allege facts showing that Mulcahy deprived him of rights, privileges, and immunities secured by the Constitution and laws of the United States. Jenson v. Olson, 353 F.2d 825, 828 (8th Cir. 1965).

Johnson does not dispute that the D-pod prisoners threw their food trays, nor does he argue that the lockdown that they received as a result of the improper behavior was inappropriate. However, Johnson asserts that the jail's method of

feeding prisoners while on lockdown, is a form of illegal disciplinary action. Mulcahy denies any deprivation of food and asserts that the D-pod prisoners received the same amount of food while on lockdown that other prisoners received, the only difference being that the food was served in sacks instead of on trays. This change in the method of service was in response to the improper behavior of the prisoners throwing their food trays.

In support of his statement that the same amount of food was served in the sacks as in the normal tray service, Mulcahy submitted affidavits from himself and various other correctional officers who were working the D-pod at the time in issue. However, a reading of the affidavits reveals that none of the witnesses made any statements regarding the <u>amount</u> of food received by the prisoners. They describe the improper behavior and the change in the method of service to sacks from trays, but no one ever states that the D-pod prisoners were given the same <u>amount</u> of food in the sacks as is provided by tray service. In Johnson's opposition brief he states that during the lockdown the prisoners were fed: "(1) cold sandwich, (1) slice of cheese, and a fruit." In Mulcahy's reply brief, he does not dispute that this was the meal received by the prisoners during lockdown. Obviously the meal described by Johnson is not a complete deprivation of food.

The question is whether the meal which he alleges was served while on lockdown is a violation of his constitutional rights.

Although Johnson mentions the Missouri statute in his grievance, he never states under which constitutional or federal right he brings this food deprivation claim. Construing the *pro se* complaint liberally, Johnson's allegations could be read as a cruel and unusual punishment claim under the Eighth and Fourteenth Amendments. Prisoners in the past have raised claims related to food deprivation and deficiency under these constitutional rights. See Phelps v. Kapnolas, 123 F.3d 91 (2d Cir. 1997); Cooper v. Sheriff, Lubbock County, Texas, 929 F.2d 1078 (5th Cir. 1991); Freeman v. Trudell, 497 F. Supp. 481 (E.D. Mich. 1980).

According to the Supreme Court, the Constitution "does not mandate comfortable prisons," and only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 349, 347 (1981)). Conditions of confinement "must not involve the wanton and unnecessary infliction of plain, nor may they be disproportionate to the severity of the crime warranting imprisonment." Rhodes, 452 U.S. at 347. Prison officials are required to ensure that inmates receive

"adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).

Prison officials violate the Eighth Amendment when two requirements, one objective and one subjective, are met. First, the alleged deprivation must be objectively "sufficiently serious." Second, the deprivation must subjectively constitute "unnecessary and wanton infliction of pain." Id. at 834 (citations omitted). For a prison official's actions or omissions to be "sufficiently serious," they must result in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes, 452 U.S. at 347).

Johnson's allegations of food deprivation are not sufficiently serious to qualify as Eighth Amendment cruel and unusual punishment under the Supreme Court's standard. A complete deprivation of food for three days would constitute a denial of the minimal civilized measure of life's necessities. However, Johnson admits to having received a sandwich, a slice of cheese, and a fruit in the sack meals served while on lockdown. Although it may not be the most nutritiously-balanced meal, control of the administrative details of a prison, including diet, is within the discretion of prison officials, assuming it is adequate. Burgin v. Nix, 899 F.2d 733, 734 (8th Cir. 1990). I conclude that the sack meals served do not qualify as inadequate food. To the extent that Johnson relies on the fact that he

received a cold meal instead of a hot tray meal, this temperature difference is also not a sufficiently serious deprivation to rise to the level of cruel and unusual punishment.  See also Freeman, 497 F. Supp. at 482 ("[I]t has been held that deficient prison food does not rise to the level of a constitutional violation requiring the intervention of a Federal Court.")

In addition, Johnson alleges no harm which was suffered as a result of the sack meal service, and there is no evidence of unnecessary and wanton infliction of pain.  Mulcahy is entitled to summary judgment as to Johnson's food deprivation claim.

### C.  Commissary Restriction without Due Process Claim

Johnson states that he received a 30-day commissary restriction without being given a chance to plead his case and without a hearing.  As a result of this restriction without due process, he argues that he was deprived of his property and money in violation of the Fourteenth Amendment.  Although Johnson's money was not taken from him during the 30-day period, he was unable to spend it freely.  In the complaint, Johnson states that the restriction was received on January 22, 2006, however, evidence presented by Mulcahy demonstrates that no 30-day restriction was given to Johnson on that date.  In his response, Johnson clarifies that the date was a misprint and states that the 30-day commissary restriction for

which he seeks relief was actually received on February 23, 2006. Mulcahy filed copies of documents from Johnson's prison file including a copy of an Inter-Office memorandum regarding an incident in February of 2006. According to the memo, Johnson and five other inmates received a one month loss of commissary privileges after failing to lock down in their cells when ordered to do so.[2]

Commissary privileges are just that -- privileges. Inmates at the Cape Girardeau County Jail should be aware of this since the Inmate Rules Handbook provides a list of 'Privileges' and a separate list of 'Rights.' Commissary is included under 'Privileges,' while things such as shelter, bed and bedding, and clothing are included as 'Rights.' Commissary is a privilege earned by inmates and as such it can be withdrawn as a result of misconduct or a failure to follow orders.

In order to state a § 1983 claim, Johnson must allege facts showing that Mulcahy deprived him of rights, privileges, and immunities secured by the

---

[2] Although the Inter-Office Correspondence memo refers to this incident as occurring on February 21, 2006, both Mulcahy's statement of undisputed facts in his memorandum in support (paragraph 19) and Johnson's response in opposition state that this incident occurred on February 23, 2006. Construing the *pro se* complaint liberally, I will assume everyone is referring to the same incident regardless of whether it occurred on the 21st or the 23rd.

To confuse things further, Johnson's addendum filed on June 22, 2007, attempts to encompass three commissary restriction punishments which he received between January and October 2006. Although these additional occurrences of loss of commissary restrictions were not raised in the original complaint, the Court analysis applies generally to commissary as a privilege not guaranteed by federal law or the Constitution.

Constitution and laws of the United States.³  Jenson, 353 F.2d at 828.
Government actions affecting the conditions of prison confinement implicate a
prisoner's constitutional rights only where the actions impose an atypical and
significant hardship on the inmate in relation to the ordinary incidents of
incarceration.  Sandin v. Conner, 515 U.S.472, 483-84 (1995).  The discipline
imposed on Johnson for his failure to lock down -- misconduct which he does not
deny -- does not fall outside the parameters of ordinary prison life.  Johnson points
to no state regulation or statute that creates a protected liberty interest in
commissary privileges, and the Court is aware of no such statute.  Johnson's loss
of commissary privileges was a minor sanction and it does not rise to the level of
an atypical or significant hardship.  See Frazier v. Coughlin, 81 F.3d 313 (2d Cir.
1996) (finding no liberty interest in 30 days of confinement to his cell and 30 days
loss of commissary, recreation, package and phone privileges).

---

³ As with the second claim, Johnson alleges that Mulcahy's actions violated state statute. He cites to Missouri Revised Statute § 217.380(2) which requires a proper hearing before confinement in disciplinary segregation:

> An offender who has violated any published rule or regulation of the division or correctional facility relating to the conduct of offenders may, after proper hearing and upon order of the chief administrative officer or his or her designee of the correctional facility, be confined in a disciplinary segregation unit for a period not to exceed thirty days.

This statute does not apply here because Johnson does not allege, and there is no evidence, that he was confined to disciplinary segregation as a result of the February 2006 incident.

In addition, Johnson did not use the prison grievance procedure to request a hearing or any other administrative relief as a result of the loss of commissary privileges in February of 2006. The record shows that the only grievance filed by Johnson on February 21, 2006, relates to his food deprivation claim. Johnson cannot claim a denial of due process when he failed to use the system put in place to guarantee due process on such claims.[4]

## **Conclusion**

Defendant James Mulcahy is entitled to summary judgment on claims two and three of Johnson's supplemental complaint because there are no genuine disputes of material fact. The sack meals Johnson received while on lockdown do not qualify as inadequate food as required to state a claim for cruel and unusual punishment under the Eighth Amendment. Johnson's loss of commissary privileges does not rise to the level of a constitutional violation either. Because summary judgment was already granted to Mulcahy on claim one of the complaint, this ruling disposes of the case.

Accordingly,

---

[4] Although the Court is denying Johnson relief on his § 1983 claims, the Court recognizes the lack of respect for the grievance procedure that is exhibited by jail officials responding to complaints with comments such as "You're full of shit" and "Okay, my response is you are retarded." The grievance process should be taken seriously not only by inmates but by jail officials as well.

**IT IS HEREBY ORDERED** that defendant's second motion for summary judgment [#29] is GRANTED.

A separate judgment in accord with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of August, 2007.